May it please the Court, Mary Keane O'Neill, law student and pro bono counsel for Petitioner Appellate Edgar Nava Cortes, appearing under the supervision of Attorney Andrew Knapp, and with my co-counsel's appearance. Edgar's petition challenges ICE's execution of Edgar's removal order in violation of his automatic stay of removal, which was in effect and still remains in effect during the pendency of his motion to reopen. His petition also challenges ICE's refusal to release him on a $7,500 bond that had been ordered by the BIA. The fact that Edgar's removal order was executed before his habeas petition was filed did not deprive the District Court of habeas jurisdiction under the rule in Singby-Waters. In Singby-Waters, this Court held that the District Court retains jurisdiction over habeas petitions that are filed after deportation when the execution of that removal order was unlawful. Sing held that the execution of a removal order is unlawful when immigration officials fail to comply with a stay or when the removal is in violation of petitioner's right to counsel. The District Court's approach distinguishes Edgar's case from that in Singby-Waters on the sole fact that no judge had issued Edgar's stay of removal. However, the execution of a removal order in violation of any stay should be unlawful. In this case, the removal is unlawful because Edgar was removed in violation of the automatic stay on his removal under 8 U.S.C. 1229 A.C. 7C. Wasn't this a petition for habeas corpus? Yes. Is there any question you have to be in custody in order to seek habeas corpus or to receive habeas corpus relief? We do have to be in custody. However, courts have interpreted in custody to include more than just physical custody. And in Singby-Waters, this Court held that a noncitizen who is removed in violation of a stay or in that case also in violation of a right to counsel, that they remain under the restraint of the order of deportation, that they have not deported, and that they are still considered in custody for purposes of habeas jurisdiction. Was that for extraordinary circumstances? Well, that was what the Miranda Court interpreted Singby-Waters to mean. But in Singby-Waters, the extreme circumstance was that he was removed in violation of a stay on his removal and in violation of his right to counsel. Well, is there any question that a stay was denied 10 days later? Yes. There had been the BIA had denied Edgar's request for a stay. However, our position is that he was still protected by the automatic stay on his removal. Even if that stay was denied? It was a separate stay. Counsel had requested a separate stay after he had submitted the motion to reopen for the BIA. And this is a stay that is, in addition, an automatic stay that is guaranteed by statute, which remained in place pending all appeals. And because his motion to reopen had not yet been decided when he was, when the execution of his removal order occurred, and because the NYSCA has remanded his motion to reopen back to the BIA right now, his automatic stay and his removal still remains in effect. Even though the Court directs that there not be a stay, you're saying that the stay cannot be lifted. The BIA? Your automatic stay. Yes. That is our position, that the automatic stay. But the Court has no power to release it. Well, if the Court were to make a, were to determine, a court, I think it would have to be a court, were to determine that he had not made out a prima facie case of eligibility, then the automatic stay would dissolve, right? Correct. Yes. And no court had ever decided when Edgar, when the, when his removal order was executed, that he had not established a prima facie case for cancellation. So. Well, when they lifted the stay, what did they, what did they find? They found, when they lifted the stay, they decided that, in the BIA's opinion, that he had little likelihood of success to. Little, it's, the words are little likelihood that the motion will be granted. Yes. His motion to reopen. I understand. But why is that not a determination that he was not eligible for a stay? Because he doesn't have to show that he's eligible for a stay. He just has to put forth a prima facie case under the statute. All right. Why does that not amount to such a finding? Because a prima facie case is, just by the language, should be a lower standard than whether or not you should receive cancellation of your removal order. I see you have about 40 seconds left. Furthermore, so because Eggers remains in custody due to the unlawful execution of his removal order, which was in violation of the stay and in violation of his right to counsel, his petition should have remained at the district court because he was in custody for purposes of KBS jurisdiction, and his case was not moot. This case also in Blandino held, or this Court in Blandino held that a removal is also not mooted as long as there are collateral consequences that are not shared by others, which also apply in Eggers' case that are described in the brief. Thank you. There's no other questions. Do you want to pass the baton to your co-counselor, or do you want to reserve? We would like to reserve two minutes for rebuttal at the end. We'll put nine minutes back on the calendar, and if you want to reserve two minutes, you'll have to just keep an eye on the clock. Thank you, Your Honor. Thank you. Good morning, Your Honors. Good morning. May it please the Court, I am Zephyr Simonian, appearing under the supervision of Professor Andrew Napp. Your Honors, Eggers' habeas petition challenges ICE's unlawful execution of the removal order, as well as ICE's refusal to honor the BIA's order to release him on bond. Although these challenge actions happened while Eggers was in custody, Eggers was detained as a result of the final order of removal. These actions are nonetheless not part of the final order of removal, because they have nothing to do with the BIA's decision to deny the motion to reopen. Therefore, the challenges are not reviewable under Section 1252A5, which governs this Court's review of orders of removal made by the BIA and the basis given for its decision. This Court stated in Siem Reholder that determining when the REAL ID Act preempts the habeas jurisdiction requires a case-by-case inquiry turning on a practical analysis, and that there are many circumstances in which an alien, though subject to an order of removal, can properly challenge his immigration detention in a habeas jurisdiction without unduly implicating the order of removal. For instance, in Siem vs. Gonzalez, this Court found that the petitioner's challenge for ineffective assistance of counsel was unrelated to the final order of removal. Therefore, the District Court had habeas jurisdiction. In that case, the petitioner claimed that his attorney failed to timely file the petition for review, and as a result, he wasn't able to appeal the case. This Court held that even if there was a successful habeas petition, it would result in nothing more than one day in court, which means that the underlying removal order would not have changed. And therefore, we have to look and see if the relief that the petitioner is seeking is not going to undermine the underlying removal order, then the District Court will have habeas jurisdiction. Now, in Siem vs. Gonzalez, the petitioner was deprived of the ability to even file the petition. In this case, we're claiming that the deprivation is even worse because he's being deprived of the protection that Congress wanted him to be able to litigate the case while he was in the United States, namely that he be present in the United States under the automatic stay of removal order. Now, further... Who makes the determination as to whether the automatic stay is in effect or not in effect? Well, the way we are interpreting it is that because in the statute it says pending all appeals, essentially what that means is that as long as there is some motion or appeal that is still pending, he or Edgar will be able to stay in the United States as per the statute, and ultimately, it would be after all these appeals that we could conclude and perhaps under the nine at the ninth circuit. Well, but you're applying it regardless of whether there's an appeal. You're applying it to a motion. Well, except in this case, there was, well, yes, there was the motion to reopen, but we're saying that this is part of the appeal as per the statute. But the statute doesn't say pending all appeals. It says all appeals if the motion establishes that the alien is a qualified alien. Yes. Well, they found that he's not likely to be a qualified alien. Well, except that when we looked at what the BIA said, the BIA didn't say that he is not a qualified alien. They just said that they were not persuaded. And so what we're saying here, but part of the reason. That's like saying we don't disagree with you. We're just not persuaded. We agree with you. Well, what happened was that they didn't stop there. They then went a step ahead, and they said that even if they were to exercise their discretion, they decided that they're not going to exercise their discretion. And so we're concluding that the basis for their decision was that they realized, okay, this case is not likely to succeed on his application, and therefore, they're not even going to look at the qualified alien. And furthermore, they said. Except in order to succeed, he has to be a qualified alien. But what we are saying is that the standard and the threshold for determining whether or not he's a qualified alien is just a prima facie case. And that as long as he's able to plead that in his motion and show that, that that would be enough. And part of the reason that we are interpreting it this way is because of the pending of all appeals language. And so we're saying how can you interpret or decide whether or not he's a qualified alien until you get to the conclusion of all the appeals. And that's. Okay. I see you're down to about three minutes and change. Did you want to reserve some for rebuttal? Yes, Your Honor. Thank you. We'll hear from the government now. Good morning, Your Honor. May it please the Court. My name is Sarah Fabian. I'm with the Department of Justice. I'm here today on behalf of the Respondents, the appellees in this case. Your Honor, the district court correctly concluded that it lapsed jurisdiction over Mr. Nava's habeas petition because Mr. Nava was not in custody at the time the habeas petition was filed. And this case does not present the type of extreme circumstances that justify a finding of custody and the exercise of jurisdiction under Sing v. Waters. Now, there's no factual dispute in this case that Mr. Nava was not in custody in the traditional sense when the petition was filed, because he had already been removed. But Mr. Nava argues, nonetheless, that he was in custody under Sing v. Waters. And Sing provides an exception to the general rule requiring physical custody and a means to find that an individual is in custody for jurisdictional purposes under habeas, even though he has been removed when the petition is filed. When this Court decided Sing, it relied on two factors to find that Mr. Sing remained in custody for the purposes of his habeas petition. First, Mr. Sing was removed in violation of an explicit stay issued by the immigration judge. It was down to the last minute. The Court noted that ICE was aware of the stay and that ICE simply failed to halt Mr. Sing's removal, although the Court believed that ICE could have halted the removal. How is that logically – how is that kind of stay logically different from an automatic stay? Your Honor, in this case, I would argue we have the converse situation, that we had an explicit denial of the stay. But also – Well, we can get to that in a second, because – Okay. Okay. Because the April 6th order says that it's not likely that the relief will be granted. It doesn't say that he hasn't made out a prima facie case. So how can you say that's an explicit denial of the stay? Well, the order itself did explicitly say your request for a stay is denied. So I would say that is an explicit stay denial. Now, I think your question really is whether that was an explicit finding that he was not – had not made out a prima facie case. Yeah. I would say – I would respond in two ways. First, Your Honor, the language of the court's denial was there's little likelihood that the motion will be granted. Right. But he could still be a qualified person because he made out a prima facie case. He could even prove his case, and the board could still deny it in the exercise of its discretion. Correct? That's true, Your Honor. So, I mean, the statute is somewhat ambiguous. And what actually happened here is very odd and not completely clear. But just that ruling alone doesn't really necessarily say he hadn't made out a prima facie case and wasn't a qualified candidate. Your Honor, if that is true, or conceding that that was true, I would argue that we're looking at the extreme circumstances requirement of Singh. We want to look at whether Ice's removal there was in good faith. And I would differentiate Ice's removal here with the situation in Singh because in Singh, Ice knew there was a stay in place, they had been told, and they just failed to call the plane and stop the removal. Okay. Well, here – and this is the part that I think is factually problematic. The – we're at Nova's appealing. And on March 30, the BIA sustained his appeal, his bond appeal, and lowers his bond amount. On April 5, Nova's sister attempts to post the bond, but they won't let her. Ice won't let her post the bond. So, theoretically, he could have been released from detention, or probably should have been released from detention on April 5. And then Ice, knowing that his sister had come and given him – given proper money to get him out on bond, they remove him the next day. And to me, that doesn't seem like a real – a good exercise of good faith. With all due respect to that timeline, Your Honor, I would note that another date that's important there is April 3, 2012, which is the date that this Court – the mandate issued from the Ninth Circuit on the denial of Mr. Nova's PFR. And the effect of the denial – or the mandate issuance was that the – Mr. Nova then became subject to a final order of removal. His stay was lifted from this Court, and he became subject to a final order of removal. And as this Court has recognized in Casas and in its progeny there, the effect of the – the lifting of the stay means that Mr. Nova's detention authority then shifted from 1226a to 1231. And that means that although the bond order had – had been issued, the bond order was subject to Mr. Nova being detained under 1226a. When Mr. Nova's removal order became final, he then was detained under 1231a, and Ice had the obligation to remove him. They had a 90-minute – 90-day removal period during which they were authorized to detain him to effectuate his removal. Let me ask you, suppose the April 6, 2012 order denying the stay. You're quite correct. There was an explicit denial of the stay. Suppose that's an abuse of discretion for whatever reason. Okay. Let's just assume for the sake of discussion it's an abuse of discretion. They deny it because they don't like people named Nova or whatever. You know, just – does he have any remedy? On stay denial? Yes. I don't believe so unless he had appealed that as part of his PFR. After – I would note that this – Well, could he have brought a petition for review at that point? I don't believe so, no. So he's just out of luck. If they wrongly deny a stay, is there nothing that can be done? I don't – I don't have an answer for that, Your Honor. I would have to – I'd have to brief that for Your Honor. I don't believe so. I believe that the BIA has the discretion to deny a stay and that that is not subject for review because it's a discretionary decision of the immigration court. Okay. I would also note that without – Let me – may I ask you another question, changing subjects slightly? Of course. Suppose we were to agree with them that the writ should have been granted. What happens? We say go back to the district court, issue the writ, and then what? To agree that the district court had jurisdiction. Yeah. Let's just assume for the sake of discussion the writ should issue. How does – what happens to him? Does he – do you send a plane to pick him up or, I mean, what happens? Well, I – He had already gone back. If this court ordered the petitioner return to the United States, then ICE would, of course, comply with an order of this court. Do you go send a car for him and bring him back or what do you – I mean, how does he – what happens? You do have a procedure. I mean, there is a procedure. We do – the official language of the – is that ICE would facilitate his return. And I can't speak to the sort of details of that. That's above my pay grade. But I can tell you – I mean, does he get more than a pass so you can come back to the United States? Do you actually physically bring him back or – ICE's policy, that is, that it will facilitate the alien's return, yes. Okay. I would also note that however you read the BIA's stay order, the BIA also then subsequently did deny Mr. Nava's motion to reopen. And in that order, the BIA did explicitly state that Mr. Nava had not stated a claim for eligibility for relief under the Act. Now, opposing counsel urges that nonetheless he should be found to remain a qualified alien and have a stay in place throughout the pendency of all appeals. But I would argue that reading the statute to require that the stay remain in place throughout all the appeals, that reads out the limiting language of the statute. And the limiting language of the statute is very important because it says it shall – the statute, the automated stay shall only stay the removal of a qualified alien and only if the motion establishes that the alien is a qualified alien. So when the BIA decided that Mr. Nava had not stated a claim for relief under the Act, it effectively was holding that Mr. Nava was not a qualified alien and there was never any stay in place. So in this case, we have a clear situation where the BIA made the determination that Mr. Nava was not a qualified alien. There's no further need for the habeas court to evaluate that question. And to turn to the question of the Real ID Act and whether, you know, where jurisdiction lies to decide this question, I think what opposing counsel is urging is that the court, in a case such as this, would go and then also look into the question of whether Mr. Nava is a qualified alien. And the danger of that, as we argued, is that this Court has held when a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is inextricably linked to the order of removal, it is prohibited by Section 1252a5. And the question here of whether Mr. Nava is a qualified alien, it is clearly inextricably linked to the question of whether that is before the BIA and the motion to reopen and that may ultimately be before this Court on the petition for review. But it should not then also be answered by the habeas court because that's the clear sort of purpose of the jurisdictional stripping provision. So has anybody actually decided whether he's a qualified alien or not? I would say here in this case we have the BIA's determination that he did not make a claim, a case for eligibility in his motion to reopen. And under the language of the statute, that is the BIA saying the motion does not establish that he's a qualified alien. He's a qualified alien. Okay. Is that explicit? I mean, is there any explicit determination in this record? I would say, Your Honor, did the BIA say that? You're reading the language script and saying that it implicitly contains a finding that he's not a qualified alien. I'm asking you, just be candid, can you point me to any explicit language where that determination was made? The BIA's language in its order denying Mr. Nava's motion did not explicitly say we find that he's not a qualified alien, no. Okay. Anywhere in the record? No, Your Honor. That, for the purposes of finding whether he's a qualified alien for the purposes of the state, that is not a determination that was explicitly made in the BIA's two orders. Does he have any avenue of relief that he could pursue even though he's now removed? Yes, Your Honor. His motion to reopen remains pending. I believe it's now been remanded to the BIA for issues relating to the tolling of the equitable of the ineffective assistance claims. So he is continuing to pursue his motion to reopen. And under this Court's decision in Coit, he will be allowed to continue with his pending motion to reopen. But the collateral consequences of his being removed is that he could not return for five years, even if he were to prevail? Well, I would the collateral, having been removed, if his motion to reopen is ultimately denied, then having been removed will have that collateral consequence. If his motion to reopen were granted and he were granted immigration relief, then certainly he would, as I stated, ICE does have the policy that it would assist with his return and that he would no longer then have the 10-year bar. Didn't the BIA explicitly rule that he was not eligible for cancellation of removal? Yes, Your Honor. Okay. What other – I didn't understand your answer to Judge Wardlaw's question about qualified alien. What else would he have to be qualified? Well, my point, Your Honor, is that his claim to being a qualified alien, to being eligible for relief under the VAWA claims and for cancellation under this, continue to sort of percolate in the immigration scheme. What would he have to do to be a qualified alien? He would have to – well, this Court, upon and on the petition for review of that BIA, I think my opposing counsel mentioned it's been remanded. But when it returns to this Court, this Court will have the opportunity to look at his eligibility. What is a qualified alien? A qualified alien is an individual who has stated a claim for relief under VAWA, under the VAWA. Which means that he was subjected to cruelty? Yes, that he had been subjected to – Has been battered or subjected to extreme cruelty in the United States. Okay. And they specifically held, we are not persuaded that his mother subjected him to extreme cruelty. The evidence indicates that the Respondent was neither a lawful permanent resident, was the sole perpetrator of the violence and so forth. I mean, they specifically hold he's not qualified, isn't they? Or am I misreading it? Yes, Your Honor. I read that to be the BIA holding that he's not a qualified alien and finding that he's not eligible for relief under the Act. Okay. That was the BIA. And then it was the petition for review was filed, right? Yes, Your Honor. And then now that's been remanded, right? It's been remanded to, again, he remains subject to a final order, but his motion to reopen is in consideration before the BIA again for issues relating to equitable tolling of his ineffective assistance claim. That's still kicking around? It is. And then presumably it will either be reopened and proceed in immigration court or be denied and returned to this Court on a petition for review. Right. But that's a different ground from what's involved in this case. It may or may not be. The current issue under consideration of the BIA is a different ground. But when it returns in the PFR, I presume that he will petition for review of all of the issues of the BIA. What's the basis for the ineffective assistance of counsel? My colleague is handling that. But my understanding is that he, and please correct me if I'm wrong, that he alleged that he did not, that his counsel improperly conceded removability in the initial removal proceedings. I see my time is up. Thank you, Ms. Davian. Back to petition. Who's going to close? Ms. O'Neill, you've got about three minutes and change. Okay. Thank you, Your Honors. No court ever decided in this case that Edgar did not meet a prima facie case for a qualified alien. The BIA's decision was after he was, after his removal order was executed. So ICE couldn't have relied on the BIA's determination that Your Honor had quoted earlier. That was the April 24 order. Correct, the April 24. And he was removed on April 6th. April 6th, yes. Correct. Well, if he had remained, though, he would have been removed at the time of the removal order. Isn't that right? Well, but that is eight or ten days later. He would have been removed. Well, first of all, Your Honor, it still would have made his removal unlawful, which is what his habeas petition is challenging. It would have made the subsequent removal unlawful? I don't think so. No, but we're challenging. Well, I understand. And what I am raising is the significance of returning him to the United States. Correct, Your Honor. What is the purpose of that? Well, but in addition to that, we still believe that the BIA's order on April 24th, I believe it was, still did not establish that he was not a qualified alien. And that decision. Why don't you think that?    He was not a qualified alien. He was not a qualified alien. He was not a qualified alien. In their opinion. Because we believe that the prima facie case elements should only regard the objective elements of the prima facie case. I don't know what that means. The objective elements for the prima facie case are just continual presence for three years, absence of any criminal bar, and a qualifying relationship to the abuser, which was on the face of that motion to reopen. That is, you don't think abuse, the absence of abuse does not defeat a claim of qualified alien? Well, that is a subjective, one of the subjective elements, which. I don't know what you mean by that. Doesn't a court have to, you told me a court has to decide that. How is that subjective? Yes, Your Honor. But still, we believe that the language in the BIA's opinion still does not you know, the prima facie case has to be a lower element. And the language that the BIA was using was for purposes of statutory cancellation of removal, not purposes for the VAWA motion to reopen. And since then. So you think he should have first been held to be prima facie enough, and then later no effect should be given to the actual determination? Well, but pending the finality of all of his appeals, then the state wouldn't be in effect. But furthermore, the BIA's opinion has since been vacated because the Ninth Circuit is remanding the case back to the BIA. So now the BIA's determination shouldn't have such a strong effect anymore now that the BIA is going to start over again in analyzing their case. But furthermore, the removal was just not in good faith. The ICE official. You're out of time. Do you want to finish your sentence? Oh, just the ICE official misled counsel by saying that he wouldn't be removed, but removed him the next day and refused to grant this release on bond. So we believe that in totality of all these circumstances, his removal is unlawful, which makes the habeas jurisdiction custody element met. Thank you very much. The case was argued and submitted. We want to thank Southwestern Law School. Professor Knapp, thank you for handling this case on a pro bono basis. Thank you, Ms. Fabian. The case was argued and submitted.
judges: Cedarbaum, Silverman, Wardlaw